UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **JAMES SPRINGER,** | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHELLE LUJAN GRISHAM,** | § | |
| In her official capacity as | § | |
| Governor of New Mexico | § | Hon. |
| | § | |
| And | § | |
| | § | |
| **PATRICK M. ALLEN** | § | |
| In his official capacity as | § | |
| Secretary of New Mexico Department | § | |
| Of Health | § | |
| *Defendants* | § | |

### PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

NOW COMES JAMES SPRINGER, Plaintiff, and hereby moves pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction prohibiting Defendants Michelle Lujan Grisham ("Governor Grisham") and Patrick M. Allen ("Secretary Allen") from enforcing Executive Orders 2023-130 and 2023-132 as an unconstitutional suspension of the United States Constitution, Second Amendment and New Mexico Article II, Section 6 right to keep and bear arm defense of self and state until this Court has an opportunity to issue a final judgment on the merits.

Plaintiff make this motion for a preliminary injunction on the grounds that (1)

Plaintiff has demonstrated a likelihood of succeeding on the merits of his claim that Defendants have unlawfully and unconstitutionally suspended both open and concealed carry within any "cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year" and "more than 90 firearm-related emergency department visits per 100,000 residents"; (2) Plaintiff is likely to suffer irreparable harm in the absence of the relief requested; (3) the harm Plaintiff is likely to suffer if the preliminary injunction is denied outweighs the harm that Defendants are likely to suffer as a result of the preliminary injunction; and (4) the public interest favors issuing the preliminary injunction.

Therefore, Plaintiff hereby respectfully moves this Court to enter a temporary restraining order enjoining enforcement of the prohibition on lawful carry.

**FACTUAL BACKGROUND**

1. On September 7, 2023, Governor Grisham issued Executive Order 2023-130, *DECLARING STATE OF PUBLIC HEALTH EMERGENCY DUE TO GUN VIOLENCE*. Exhibit A. The Order claims that a "state of emergency" is imposed due to the existence of something called "gun violence" in New Mexico."

2. The following day, on September 8, 2023, Secretary Allen invoked the Governor's order to issue "*Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures*" (hereinafter "the Order") that mandated "no person, other than a law enforcement officer or licensed security officer, shall possess a firearm…either openly or concealed, within cities or

counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health." Exhibit B.

3. The Order additionally bans law-abiding New Mexicans from "possess[ing] a firearm on state property, public schools, and public parks."

4. The Order effectively prohibits any lawful carry by any residents and citizens outside the home except law enforcement and armed security in the most populous city in New Mexico, Albuquerque, and Bernalillo County.

5. Plaintiff is a law-abiding adult citizen who lives just outside the Bernalillo County line but does business in and frequently travels to Bernalillo County and the City of Albuquerque. He carries a firearm regularly for self-defense and other lawful purposes while traveling conducting his day-to-day business. Because of the Order, Plaintiff is precluded from exercising his fundamental rights enshrined within both the New Mexico and United Constitution to keep and bear arms in defense of self, state, and others.

6. Defendant Grisham is the elected Governor of the State of New Mexico. This action is brought against her in her official capacity.

7. Defendant Allen is the Secretary of New Mexico's Department of Public Health. This action is brought against him in his official capacity.

8. Defendants are prohibited from violating the rights of those under their governance and required to enforce the laws as duly passed by the Legislature.

Unfortunately, Defendants are abusing their authority under color of law by enforcing and will continue to enforce unconstitutional edicts that disarm the peacefully and lawfully armed Plaintiff and others in violation of 42 U.S.C. § 1983.

## LEGAL STANDARDS

### I. Legal Standard for a Temporary Restraining Order

The Supreme Court's decision in *Winter v. NRDC* can be said to provide an exacting standard for the grant of TROs and preliminary injunctions. *See Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008). Per *Winter*, a plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.*, at 20.[1]

### A. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

#### a. SECOND AMENDMENT CLAIMS

The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald v. Chicago*, 561 U. S. 742, 780 (plurality opinion). In the recent *Bruen* case, the Supreme Court laid out the test that courts need apply when determining whether a Second Amendment right is implicated. The two-part holds that "when the Second Amendment's plain text covers an individual's conduct, the Constitution

---

[1] *See also Munaf v. Geren*, 553 U.S. 674, 689-690, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982); *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018).

presumptively protects that conduct." Then, to justify its regulation, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126 (2022).

### b. STEP ONE: THE SECOND AMENDMENT'S PLAIN TEXT COVERS PLAINTIFF'S CONDUCT

Plaintiff carries a handgun in public for self-defense and other lawful purposes. "[T]he Amendment's core generally covers carrying in public for self-defense." *Wrenn v. District of Columbia*, 864 F.3d 650, 659 (D.C. Ct. of App 2017). When deciding whether the plaint text of the Second Amendment protects Plaintiff's carrying of a handgun in public for self-defense, the Supreme Court had "little difficulty concluding that it does." *Bruen,* 142 S. Ct., at 2134. The Second Amendment's plain text clearly covers Plaintiff's conduct and the first step of the *Bruen* analysis is complete.

While not necessary in determining Second Amendment rights, New Mexico's Constitution likewise protects the right of citizens to keep and bear arms. "The People have the right to bear arms for their security and defense." N.M. Const. Art. II, § 6. The New Mexico Court of Appeals has repeatedly struck down ordinances attempting to violate this fundamental right.[2]

The Order clearly and blatantly violates the right of the people to keep and bear arms for lawful purposes, most notably self-defense, in violation of Article II, Section 6, of the New Mexico Constitution and the Second Amendment of the United States

---

[2] *City of Las Vegas v. Moberg,* 82 N.M. 626 (Ct. of App. 1971). *See also State v. Rosenthal,* 75 Vt. 295 (1903); and *see In re Brickey, 8 Idaho* 597, 70 P. 609 (1902); *State v. Woodward,* 58 Idaho 385, 74 P.2d 92 (1937); *State v. Kerner,* 181 N.C. 574, 107 S.E. 222 (1921).

| P a g e                                                                                                                5

Constitution.  The Order also violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

### c.   STEP TWO: THE GOVERNMENT CANNOT DEMONSTRATE THAT THE ORDER IS CONSISTENT WITH HISTORICAL TRADITION OF FIREARM REGULATION

While a total prohibition on personal carry is only *presumptively* unconstitutional under the *Bruen* test, the Order could be saved if it can prove that preventing people from being able to defend themselves from the very violence the Order purports to protect is "consistent with the Nation's historical tradition of firearm regulation."  There can be no doubt that it is not.

The Wilmington Insurrection of 1898 was as violent uprising of white supremacists designed to overthrow the legitimately elected biracial government in Wilmington.  Over 2,000 vigilante men set a black-owned newspaper building on fire, then went into black Wilmington neighborhoods to destroy businesses and property.  The black residents armed themselves in defense of the mob.  Despite the incredible violence involving firearms leading up to the riots, the government never instituted complete bans on the carry of firearms to solve the problem.

In the years following the Revolutionary War, the United States plunged into a severe economic crisis. Tensions were especially high in Massachusetts, where overtaxed farmers began losing their property to debt collectors. In September 1786, a small army of disgruntled citizens organized mass demonstrations across the state. Led by Revolutionary War veteran Daniel Shays, the rebels eventually armed themselves and began preventing county courts from convening in the hope of curbing property seizures.

Fearing revolution was in the air, Massachusetts governor James Bowdoin responded by mustering a 1,200-strong militia led by former Continental Army General Benjamin Lincoln. He send government forces to hand the violence rather than violate the constitutionally-protected rights of the People to keep and bear in defense of the violence.

Most recently, in the Summer of 2020, the entire country was rocked with violent riots that destroyed hundreds of businesses and resulted in billions of dollars in damage to government buildings and property. The riots took place from coast to coast took the lives of dozens of innocent Americans, including police officers and fire fighters. Despite this widespread violence, not a single government attempted to disarm the very people who were the victims of this violence.

The Order prohibits Plaintiff from possessing a firearm in public for self-defense and lawful purposes at time when Governor Grisham claims that "New Mexico has some of the highest rates of gun violence in the nation" and that "gun-related deaths and injuries have resulted in devastating physical and emotional consequences." In other words, at a time when New Mexico citizens are most likely to need the ability to defend themselves in public, Governor Grisham and Secretary Allen are seeking to disarm them and make them defenseless.

At no time in history have government officials responded to violence with blanket, unconstitutional bans on the right to keep and bear arms. Governor Grisham's and Secretary Allen's prohibitions are clearly inconsistent with the Nation's historical tradition of firearm regulation.

*Bruen* clearly identified the public's right to keep and bear arms in public. New

York tried to defend its position that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a non-speculative need for armed self-defense in those areas," exactly the way that Defendants are attempting to justify their position. The *Bruen* Court held that "the history reveals a consensus that States could not ban public carry altogether" as Defendants are here. *Bruen*, 142 S. Ct., at 2146.

New York failed to meet its "proper cause" burden in *Bruen*'s second step analysis. Surely, New Mexico's blanket prohibition must fail for going even further than New York by not even requiring a showing of "proper cause."

### d. Plaintiffs will succeed on the merits

There can be no doubt that Plaintiff's conduct is both presumptively protected under the New Mexico and Federal Constitutions, but there is no way in our Constitutional Republic that Defendants' Orders are consistent with the Nation's historical traditions of firearms regulation. In fact, Defendants devolve the State of New Mexico into an autocratic dictatorship where tyrants can wave their hand and proclaim the electorate nothing more than slaves reliant on their government masters for protection from the very violence for which Defendants have failed to stop.

### B. PLAINTIFF HAS SUFFERED IRREPARABLE HARM

Plaintiff has established that he will prevail on the merits of his constitutional claim. The loss of freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury for purposes of granting a preliminary injunction. *See Elrod*

*v. Burns*, 96 S. Ct. 2673, 2689 (1976).[3]  While the *Elrod* case regarded First Amendment protected speech, "the same holds true for Second Amendment freedoms." *Fraser v. BATFE*, No. 3:22-cv-410, 2023 U.S. Dis. LEXIS 154088, at *10 (E.D. Va. Aug. 30, 2023).  A finding of irreparable harm "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).  Finally, "[w]hen an alleged deprivation of a constitutional right is involved, ... most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, No. 23-15016, 2023 U.S. App. LEXIS 23760, at *10 (9th Cir. 2023).

    C.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST OF AN INJUNCTION

When the Government is the opposing party in a suit such as this, the balance of equities and public interest factors merge.  *Nken v. Holder*, 556 U.S. 418, 436 (2009).  Defendants suggest that in order to enjoy the benefits of police or government protection from the alleged threats of so-called "gun violence," the People must surrender their rights.  "When the constitutional rights of an individual and other members of the public are violated, or are threatened to be violated, public interest concerns are implicated because all citizens have a stake in upholding the Constitution." *Herrera v. Santa Fe Pub. Sch.*, 792 F.Supp.2d 1174, 1199 (D.N.M. 2011).  "Government cannot condition the receipt of a benefit or privilege on the relinquishment of a constitutional right." *Id.*, at 1183.

Defendants' Orders argue that the only way to solve the crime problem is to ban

---

[3] *See also de Jesus Ortega Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir., 2012).

guns in places hardest hit by…guns. In other words, disarming potential victims will make victims safer from violent criminals and magically prevent further violent crimes. Nothing in the order targets the criminals actually engaged in criminal activity. Criminals will continue their dastardly acts with or without the Orders. The only people that are affected are potential victims and law-abiding citizens like Plaintiff. Regardless of the impact, *Bruen* "declined to engage in means-end scrutiny because '[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Bruen*, 142 S. Ct. at 2129 (quoting *District of Columbia v. Heller*, 554 U. S. 570, 634 (2008)).

The public interest will be served by injunction because the People have a right to keep and bear arms in self-defense. Constitutionally-protected rights are the bedrock of this country and to allow for its absolute destruction because of political incompetence and improper focus on the root causes of violence would result in despotism unseen since our Constitution was but a dream in the minds of our brilliant Founders.

## II. A Bond is Unnecessary

Rule 65(c) provides in part that no preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." The Tenth Circuit has stated that the trial court has "wide discretion" in setting the amount of the preliminary injunction bond. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1158 (10th Cir. 2001)

(quoting *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 783 (10th Cir. 1964)).  This preliminary injunction enforces fundamental constitutional rights against the government.  Waiving the security requirement best accomplishes the purposes of Rule 65(c).  *United Utah Party v. Cox*, 268 F.Supp.3d 1227, 1260 (D. Utah 2017).  Plaintiffs respectfully request that no bond requirement be imposed.

## CONCLUSION

For the foregoing reasons, this Court should grant the injunctive relief Plaintiff requests to enjoin enforcement of Defendants' unconstitutional prohibitions on constitutionally-protected rights, allow for the waiver of bond, and order such further relief as this Court deems appropriate.

Dated: September 11, 2023

                                                                                  _____
                                                                                  Respectfully submitted, /s/ Joseph Lee Woods

Joseph Lee Woods
Law Office Of Joseph L. Woods LLC
NM Bar No. 159421
500 Marquette Avenue NW Suite 1200,
Albuquerque, NM 87102
(866) 855-1195
Joseph@WoodsInjuryLaw.com

CJ Grisham*
Law Offices of CJ Grisham
TX Bar no. 24124533
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
(254) 405-1726
cj@cjgrisham.com

*Pro hoc vice request forthcoming

*Attorneys for James Springer*

| P a g e                                                                                                                                                            13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2023, a true and correct copy of the foregoing has been served on Governor Grisham and Secretary Allen via U.S. Mail.

_____
/s/ Joseph Lee Woods
Joseph Lee Woods

*Attorney for Plaintiff*